```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                           HOUSTON DIVISION

UNITED STATES OF AMERICA       §
                               §
                               §
v.                             §      CR. NO. H-06-421
                               §
                               §
ADNAN BABAR MIRZA              §
```

ORDER

Pending is Defendant Adnan Babar Mirza's Motion to Dismiss Count 2 of the Superseding Indictment (Document No. 98), to which the Government has filed its opposition in writing, and on which the Court heard oral arguments on March 5, 2010.

Count 2 charges Defendant under 18 U.S.C. § 371 with "unlawfully and knowingly" conspiring with others "to willfully and unlawfully make a contribution of funds, to wit: United States currency, to and for the benefit of a specially designated global terrorist organization, to wit: the Taliban," in violation of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-1707 ("IEEPA").[1] Defendant contends that this conspiracy charge must be dismissed because: (1) the IEEPA "is an unconstitutional delegation of legislative authority" to the executive; (2) the terms "funds" and "Taliban" are unconstitutionally vague as applied to Defendant; (3) the orders and regulations at issue violate his First Amendment

---

[1] Document No. 73 at 4-5.

rights; (4) the "ill-defined scienter requirement" violates due process; and (5) contribution of funds to Taliban family members for humanitarian purposes does not violate the IEEPA.[2]

As to the first contention, IEEPA is not an unconstitutional delegation of Congressional legislative authority to the executive. The Supreme Court in <u>Touby v. United States</u> upheld a delegation of power allowing the Attorney General temporarily to designate substances as "controlled" under less strict guidelines than those imposed for permanent scheduling, because the statute still "meaningfully constrain[ed] the Attorney General's discretion to define criminal conduct." 111 S. Ct. 1752, 1756 (1991).[3] Applying <u>Touby</u>, both the Second and Fourth Circuits have found that IEEPA similarly "meaningfully constrains the [President's] discretion." <u>United States v. Dhafir</u>, 461 F.3d 211, 216 (2d Cir. 2006) (quoting <u>Touby</u>, 111 S. Ct. at 1756); <u>United States v. Arch Trading Co.</u>, 987 F.2d 1087, 1093 (4th Cir. 1993)). IEEPA limits Presidential authority by, among other things: (1) requiring an "unusual and extraordinary threat with respect to which a national emergency has been declared"; (2) mandating consultation with and regular

---

[2] Document No. 98 at 13, 17-18, 21, 23.

[3] Specifically, the Attorney General could only exercise these powers when "necessary to avoid an imminent hazard to the public safety." <u>Id.</u> Moreover, the statute required consideration of three enumerated factors in making the determination, notice in the Federal Register and to the Secretary of Health and Human Services, and consideration of the Secretary's comments, if any. <u>Id.</u>

reporting to Congress; and (3) the power retained by Congress to terminate the President's declaration of emergency.  Dhafir, 461 F.3d at 217 (citing 50 U.S.C. §§ 1701(b), 1702); Arch Trading, 987 F.2d at 1093 (citing 50 U.S.C. § 1703).  Moreover, IEEPA's relation to foreign affairs, "an area in which the President has greater discretion," further supports the conclusion that IEEPA is a legitimate exercise of Congressional authority.  Dhafir, 461 F.3d at 217 (citing Dames & Moore v. Regan, 101 S. Ct. 2972, 2984 (1981)); Arch Trading, 987 F.2d at 1094 (discussing same).  The Court finds this reasoning persuasive, and accordingly reaches the same conclusion.

Regarding Defendant's second assertion, the terms "funds" and "Taliban" are not unconstitutionally vague.  "[T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."  Hamling v. United States, 94 S. Ct. 2887, 2904 (1974) (quoting Roth v. United States, 77 S. Ct. 1304, 1312 (1957)) (internal ellipses and quotation marks omitted).  In United States v. Lindh, the court found that the prohibitions set forth in IEEPA regulations barring the "provision of 'services' to designated terrorist organizations and the Taliban" provided "sufficient definiteness that an ordinary person could understand what conduct was prohibited."  212 F. Supp. 2d 541, 573-74 (E.D. Va. 2002)

3

(citations omitted).  "The obvious scope and purpose of the Regulations is to ban most transactions between U.S. persons and al Qaeda and the Taliban, with certain limited exceptions." Id. at 574.  This reasoning applies with equal force to the instant case.

Moreover, to the extent that Defendant contends the word "Taliban" lacks a commonly understood meaning, Count 2 requires that the government prove Defendant's specific intent to contribute funds to "the Taliban."  *See* 50 U.S.C. § 1705(b) (requiring "willful" violation of regulations); Lindh, 212 F. Supp. at 574 (noting same with respect to counts implicating IEEPA and related regulations).  "A mind intent upon willful evasion is inconsistent with surprised innocence." United States v. Ragen, 62 S. Ct. 374, 379 (1942).  Thus, "a requirement of willfulness makes a vagueness challenge especially difficult to sustain." Lindh, 212 F. Supp. 2d at 574 (quoting United States v. Hescorp, 801 F.2d 70, 77 (2d Cir. 1986) (upholding IEEPA regulations)).

The Court further observes, contrary to Defendant's fourth assertion, that the scienter requirement of 50 U.S.C. § 1705 is not inadequately defined.  While mere "violation" may lead to a civil penalty, a "willful" violation may lead to criminal liability.

> As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose."  In other words, in order to establish a "willful" violation of a statute, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful.

Bryan v. United States, 118 S. Ct. 1939, 1945 (1998).  Proof of intent in the conspiracy context is similarly well settled. *See, e.g.*, United States v. U.S. Gypsum Co., 98 S. Ct. 2864, 2877 n.20 (1978) (identifying two types of intent needed to prove conspiracy: "the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy").  Read together, the allegation of "knowingly" conspiring to "willfully violate" IEEPA simply requires proof that Defendant knowingly agreed to commit an unlawful act, namely, to contribute funds to the Taliban; that he entered that agreement deliberately to further this unlawful objective; and that he did so knowing that such a contribution would be unlawful.

Moreover, it is also "well settled that an indictment for conspiring to commit an offense--in which the conspiracy is the gist of the crime--it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. Graves, 669 F.2d 964, 968 (5th Cir. 1982) (citation omitted). Thus, even if knowledge of the relevant executive orders were considered required under IEEPA--which the Court does not at this time address--Count 2 would not be "fatally defective under the Fifth Amendment," as Defendant alleges.

5

Defendant's First Amendment challenge likewise fails. "A less rigorous standard of review is applied to monetary contributions than to pure speech," United States v. Afshari, 426 F.3d 1150, 1161 (9th Cir. 2005) (citing McConnell v. Federal Election Comm'n, 124 S. Ct. 619, 656-57 (2003), *overruled on other grounds by* Citizens United v. Federal Election Comm'n, 130 S. Ct. 876, 913 (2010)). The appellate courts repeatedly have rejected First Amendment challenges to laws and regulations barring contributions to designated terrorist organizations.[4] Indeed, the Ninth Circuit has held that:

> [T]he strict scrutiny standard applicable to speech regulations does not apply to a prohibition against sending money to foreign terrorist organizations. That a group engages in politics and has political goals does not imply that all support for it is speech, or that it promotes its political goals by means of speech. Guns and bombs are not speech. Sometimes money serves as a

---

[4] *See, e.g.*, Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 736-37 (D.C. Cir. 2007) (holding that Office of the Treasury's blocking order pursuant to IEEPA did not violate the First Amendment rights of freedom of association and free exercise of religion); Afshari, 426 F.3d at 1159-62 (holding 18 U.S.C. § 2339B, which criminalizes the provision of "material support or resources to a foreign terrorist organization," does not violate the right to free speech); United States v. Hammoud, 381 F.3d 316, 329 (4th Cir. 2004) (rejecting associational and free speech challenges to § 2339B), *vacated on other grounds*, 125 S. Ct. 1051 (2005), *reinstated in relevant part*, 405 F.3d 1034 (4th Cir. 2005); Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 166 (D.C. Cir. 2003) (holding "as other courts have," with respect to a First Amendment right to association claim, that "there is no First Amendment right nor any other constitutional right to support terrorists"); Humanitarian Law Project v. Reno, 205 F.3d 1130, 1132 (9th Cir. 2000) (rejecting free speech and associational challenges to § 2339B).


>   proxy for speech, and sometimes it buys goods and services that are not speech. The government "may certainly regulate contributions to organizations performing unlawful or harmful activities, even though such contributions may also express the donor's feelings about the recipient." There is no First Amendment right "to facilitate terrorism by giving terrorists the weapons and explosives with which to carry out their grisly missions."

Afshari, 426 F.3d at 1161 (discussing and quoting Humanitarian Law Project v. Reno, 205 F.3d 1130, 1133-35 (9th Cir. 2000)) (footnotes omitted).

The reasoning applies with equal force to contributions ostensibly made to families or for humanitarian purposes: "Once the support is given, the donor has no control over how it is used." Humanitarian Law Project, 205 F.3d at 1134. "More fundamentally, money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts." Id. at 1136.

Finally, Defendant's assertion that Count 2 "fails to set forth sufficient facts to demonstrate that any contributions were intended to go to any specially designated national or the 'Taliban'"[5] is also unpersuasive. The Court must take as true the allegations of the indictment when reviewing a challenge alleging that it fails to state an offense. See United States v. Crow, 164 F.3d 229, 234 (5th Cir. 1999). Here, the express language of the

---

[5] Document No. 98 at 24.

Superseding Indictment alleges that Defendant conspired "to willfully and unlawfully make a contribution of funds . . . *to and for the benefit of . . . the Taliban*."[6] The overt acts alleged in Count 2 also detail several withdrawals and collections of funds made by Defendant or his co-conspirators allegedly "*intended for Taliban fighters* and their families."[7]

Accordingly, Defendant's Motion to Dismiss Count 2 of the Superseding Indictment (Document No. 98) is DENIED.

It is so ORDERED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 7th day of April, 2010.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Document No. 73 at 4-5 (emphasis added).

[7] Id. at 5-6 (emphasis added).